*194
 
 LAND, Justice.
 

 This is a coneursus proceeding, under Act No. 224 of 1918, as amended by Act No. 271 of 1926, wherein all claimants of record against State Highway Project No. 4606, the Monroe-Chatham Highway, were cited to come into court and establish their claims.
 

 The proceeding was instituted by R. B. Tyler Company, subcontractor. The general contractor, Merrill Engineering Company, and the surety on its bond, Union Indemnity Company; another subcontractor, Hennington Bros., and its surety, United States Fidelity & Guaranty Company; and the Louisiana Highway Commission, were made parties defendant-and served and cited.
 

 The contract between the general contractor and the Highway Commission was signed March 4,1931. To this contract was annexed a bond, dated April 7, 1931, for the faithful performance of the contract and payment of all laborers and furnishers of material, signed by Merrill Engineering Company, as principal, and the Union Indemnity Company, as surety.
 

 Notice of default by the contractor was filed by the Highway-Commission on March 13, 1933.
 

 It is alleged in the petition provoking the coneursus that tlfe Highway Commission had in its hands funds due on the contract, and that more than forty-five days had elapsed since filing of the notice of default, but that the Highway Commission had failed and refused to provoke a coneursus and deposit the fund in the registry of the court
 

 It was further alleged that the Union Indemnity Company, surety on the general contractor’s bond, was insolvent and in the hands of receivers; that the bond was therefore insufficient; and that, by reason of the insolvency and default by both surety and principal thereon, the Highway Commission was itself in default and liable to claimants on the project to the same extent as the surety on the bond.
 

 Answers • were filed by the Merrill Engineering Company, Hennington Bros., Highway Commission, and most of the claimants.
 

 No answer was filed by the United States Fidelity & Guaranty Company, or by the Union Indemnity Company; but the receivers of the latter filed an exception to the jurisdiction, wherein it is alleged and admitted that “in the proceedings entitled E. A. Conway, Secretary of State, v. Union Indemnity Company, of the docket of the Civil District Court of the Parish of Orleans bearing the No. 200,442, judgment was entered declaring that the Union Indemnity Company was insolvent and adjudging the dissolution of same.”
 

 On the. trial, the several claimants adduced testimony and introduced documentary proof in support of their claims and the matter was submitted to the court.
 

 Judgment was rendered fixing the balance due by the Highway Commission at $18,915.79, and ordering this amount deposited in the registry of the court for pro rata distribution among the claimants entitled thereto, and decreeing the principal contractor’s bond insolvent, and that the Highway Commission was liable for all claims under the bond, and that the claimants whose claims were established to the satisfaction of the court were entitled to judgment against the contractor
 
 *196
 
 and the Highway Commission, in solido, for the full amount of their respective claims, with 5 per cent, per annum interest theron. Volume 3, pp. 769, 771, 773.
 

 From this judgment the Highway Commission has taken a suspensive appeal.
 

 The only parties before the court in this appeal are the Highway Commission, and the eleven claimants in whose favor judgment was rendered for the amounts o-f their respective claims against the Highway Commission and the Merrill Engineering Company, in solido.
 

 The Highway Commission admitted that it had on hand, due on this contract, the amount which was found by the trial judge to be correct.
 

 The insolvency of the Merrill Engineering Company and the Union Indemnity Company, principal and surety on the bond, is established, in our opinion.
 

 The defenses raised by the Highway Commission for its refusal to deposit the funds in its hands, and as against its liability to the claimants to the same extent as the surety on the bond, are as follows:
 

 1. (a) “This suit is brought against Merrill Engineering Company, and the Highway Commission has no contract with such company, its contract being with Merrill Engineering Company, Inc., a separate, distinctive juristic entity.”
 

 It was shown on the trial that there was but one Merrill Engineering Company interested Or involved in this project, that it was the one which made the contract, gave the bond, and was responsible for the labor and materials which went into the work, notwithstanding that the name of the "corporation was indiscriminately used.
 

 “In our view,” said the court in National Oil Works v. Korn Bros., 164 La. 800, 807, 114 So. 659, 661, “the accidental omission of the abbreviation, ‘Inc.,’ from plaintiffs assumed name, in defendant’s copy of the contract, did not affect the matter.”
 

 And in Southern Hide Co. v. Best, 174 La. 748, 141 So. 449, 451, it was held that: “Conceding, as counsel argues, that the letters ‘Inc.’ are part of the name of the corporation, the slight alteration of the name by omitting those letters was not misleading and did not vitiate the citation.”
 

 Besides, article 432 of the Civil Code provides that: “Corporations must not only be authorized by the Legislature, or established according to law, but a name must be given to them; and it is in that name they must sue or be sued, and do all their legal acts,
 
 although a slight alteration in this name he not important.”
 
 (Italics ours.)
 

 The objection is more technical than sound, and is not well taken.
 

 2. (b) “There was no contract, express or implied with R. B. Tyler Company, Inc.”
 

 This company is a subcontractor, and provoked the concursus proceeding in this case. The Highway Commission contends that its contract with the general contractor specifically provided that it should not be sublet, unless written approval was first secured from the State Highway Engineer and that no such approval was ever obtained.
 

 
 *198
 
 It .appears that a printed document was filed and produced in evidence by the Highway Commission, containing regulations for the guidance of contractors and referred to in the contract on Project No. 4606, but not made a part thereof, or recorded with the contract in the mortgage book.
 

 . This printed document was objected to by the claimants, for the reason that it had not been authenticated or proved in any way, and was ex parte and not binding on them.
 

 None of the subcontracts was formally approved, but it was shown by oral and documentary proof that the Highway Commission, through its resident engineer and other employees and officials, was cognizant, at all times, who the subcontractors were, what they were doing, and who was performing the labor and furnishing the material that went into the construction of the project. It is too late for the Highway Commission to urge such objection, for the first time, on the trial of this case, after it has received the benefit of the labor performed and of the materials furnished. The commission should have entered its protest at the outset, and stopped the execution of the subcontracts, if they had not been legally sublet. With full knowledge of the facts, the commission acquiesced in the performance of the subcontracts by the subcontractors, and cannot now be permitted to repudiate them as illegal or invalid, and, at the same time, retain the benefit received from their performance.
 

 3. (e) The Highway Commission contends that it has been relieved of any and all liability for the labor actually performed and the material incorporated in the highway, by reason of a failure on the part of some of the claimants to timely file their sworn, itemized statements for recordation in the mortgage book, and serve copies thereof on the public authority.
 

 We assume that this defense is principally-raised to defeat the right of the claimants to participate in a distribution of the fund due on the contract, retained in the hands of the Highway Commission.
 

 The Highway Commission filed on the trial a final estimate (volume 2, pp. 337-339) showing that it had retained in its hands $18,915.79 due on this project, and its witness Hunter Allen swore to the correctness of the amount (volume 4, p. 855).
 

 The district judge, accordingly, ordered the Highway Commission to deposit that amount In the registry of the court for pro rata distribution among the claimants entitled to participate therein.
 

 The identical question was raised in Uvalde Rock Asphalt Co. v. City of Shreveport, 172 La. 987, 136 So. 26, 27, where the claimants-did not timely file their sworn' statements for recordation or serve them on the public authority, and it was held in that case:
 

 “It is unimportant that the claims of the materialmen were not filed within 45 days after the acceptance of the work, since they were filed before the funds and obligations in possession of the municipality were entirely paid over to the intervener for the account of the contractor.
 

 “The rights of materialmen are fixed by law, and nothing that the contractor or the owner of the work can do can change them-.
 

 
 *200
 
 “The law and the contract between the city of Shreveport and the Shreveport Paving Company, Inc., both reserved to the material-men the right to be paid by preference out of the fund created to discharge the municipality’s obligation under the contract, and they cannot be deprived of that right. See Thompson v. O’Leary, 146 La. 843, 84 So. 116.
 
 And as long as any part of the contract price remained in the possession of the municipality,
 
 any furnisher of material had the right to file his account and participate in the common fund. See Robinson-Slagle Lumber Co. v. Rudy, 156 La. 174, 100 So. 296; Fidelity Homestead Ass’n v. Kennedy & Anderson, 158 La. 1059, 105 So. 64.” (Italics ours.)
 

 It is now settled by repeated decisions of this court that a materialman is not required to record his claim or to serve it on the owner of the property in order to preserve his right of action against the surety on the contractor’s bond. And the court has applied this principle of law to a case arising under the provisions of Act No. 224 of 1918. American Creosote Works v. Ætna Casualty & Surety Co., 167 La. 601, 120 So. 21. And the Highway Commission in this case stands in the shoes of the surety, because of the insolvency of the bond.
 

 4. (d) “That the Highway Commission required of the contractor a bond, which was solvent and sufficient at the time it was taken, and that this was all it was obliged to do under the statute, and that timely objection was not made by the claimants to the solvency and sufficiency of the bond.”
 

 The claimants contend that, by reason of the insolvency of the principal and surety on the contractor’s bond, and the insufficiency, therefore, of the bond itself, the Highway Commission has become liable to these claimants, to the same extent as the surety on the bond.
 

 On the other hand, the Highway Commission denies that there is any personal liability on its part to the claimants, other than their pro rata part of the amount admitted to be due the Merrill Engineering Company, Inc., the contractor, on the final estimate of $18,915.79, retained in the hands of the commission.
 

 Section 1 of Act No. 224 of 1918, as amended by Act No. 271 of 1926, § 2, relating to contracts for public works, required the Highway Commission, as the public authority, “to reduce said contract to writing, same to be signed by all parties, and to require
 
 of the contractor a hand, with good and solvent and sufficient surety,
 
 in a sum not less than fifty per cent of the contract price, for the faithful performance of the contract * *
 
 *
 
 and with an additional obligation for the payment by the contractor and by all subcontractors for all work done, labor performed, or material furnished in the construction * * * of such * * * road.” (Italics ours.)
 

 This section, as amended by Act No. 271 of 1926, also provides that; “Said bond shall be executed by such contractor- with such surety or sureties as shall be approved by the officials representing the State, Parish, City, Town, Village or Public- Board, and shall be recorded with the contract in the office of the
 
 *202
 
 Recorder of Mortgages wherein the work is to be done on the day the said work begins and not later than thirty days thereafter.”
 

 Section 4 of Act No. 224 of 1918 provides: “That if, at the expiration of said 45 days there are' recorded claims filed with the said authorities and recorded in the mortgage office unpaid, the said authorities shall file a petition in the proper court where the work was done citing such claimants and the contractor, subcontractor and surety on the bond, and the said authorities shall assert whatever claims they have against any and all of them in said petition, and require the said claimants to assert whatever claims they have against any and all of them, and all of said claims shall be tried in eoncursus.”
 

 Section 5 of Act No. 224 of 1918 provides: “ * * * That if 45 days after the default of the contractor, or 45 days after the acceptance of the work, the said authorities do not file the said proceeding, any claimant may do so.”
 

 Section 6 of Act No. 224 of 1918 provides: “That if no objections áre made by any claimant to the solvency or sufficiency of the bond, the said authorities shall, ten days after the service of judicial notice on each claimant having recorded claims as aforesaid, of the said eoncursus proceeding, obtain from the Clerk a certificate to that effect, and the said certificate shall relieve the said authorities of any personal liability, and the Recorder of Mortgages shall cancel all claims recorded as aforesaid. * * * ”
 

 It is clear that, within ten days after the service of judicial notice on the claimants of the eoncursus proceeding by the public authority, any claimant may object to the solvency or sufficiency of the bond.
 

 As a matter of fact, objection was made to' the solvency and sufficiency of the bond im article 26 of the petition of R. B. Tyler Company provoking the eoncursus. Tr., p. 11.
 

 Most of the claimants filed their answers-within ten days after service of the petition-upon them, setting forth like objections to-the bond.
 

 No attempt was made by the public authority to obtain a certificate from the clerk, relieving it of personal liability, within the ten-day period. Nor could the Highway Commission have done so, because of the objections timely made by the plaintiff and many of the claimants, including the two who here join with plaintiff in this brief, Monroe Sand
 
 &
 
 Gravel Company, Inc., and Louisiana Oil Refining Company.
 

 But even though no objection to the bond had been made other than that set forth in plaintiff’s petition, it would have sufficed to have raised the issue, for it is only “if
 
 no
 
 objections are made by
 
 any
 
 claimant to the solvency or sufficiency of the bond” (section, 6), that the public authority may be relieved of personal liability. The act does not require-that objection must be made by each claimant, or by all claimants, but by
 
 wvy
 
 claimant. (Italics ours.)
 

 In the latter part of section 6 of Act No. 224 of 1918, it is provided: “ * * * If objections are made to the solvency or sufficiency of the bond, they shall be tried sum
 
 *204
 
 marily, and
 
 if the surety is found to be not solvent,
 
 or sufficient to cover the full amount for which he is bound, or if the said authorities fail to exact bond, or fail to record same within the time prescribed by law, the
 
 said authorities shall be in default and shall be liable to the same extent as the surety would have been”
 
 (Italics ours.)
 

 Under sections 4 and 6 of the act, above cited, it is clear that the Legislature contemplated that the public authority would provoke the concursus, and, unless objection to the bond on the part of one or more of the claimants was promptly made and disposed of, it should be relieved of.personal liability.
 

 But when, as in the instant case, the public authority declines and refuses to institute the proceeding, and plaintiff, who does institute it, and many of the claimants timely raise the objection, and the issue is passed upon and determined by the court, it seems to us that every requirement of the statute has been substantially met.
 

 It is clear, from the provisions of the statute above cited, that it is not sufficient that the surety be solvent, only at the time the bond of the contractor is signed and approved, but that such solvency must exist at the time the claimants assert their claims against the public authority to hold it liable “to the same extent as the surety would have been.”
 

 The trial judge, after hearing the evidence offered in support.of the claims of the various claimants, was satisfied, as to the correctness of each of the claims allowed, and we find no good reasons to change the result.
 

 Judgment affirmed.