LANDRY, Judge.
This is a concursus proceeding wherein plaintiffs, Placid Oil Company and Arkansas Fuel Oil Company, lessees in certain oil, gas and mineral leases obtained from defendants, Royalty Properties, Inc., A. M. Dupont Corporation and J. C. Dupont, Inc., have deposited production royalties accruing under said leases in the registry of the trial court and impleaded their said lessors herein to determine which of said lessors is entitled thereto.
The single issue presented is that of ownership of the following described property, to-wit:
A certain tract of land situated in the Parish of Terrebonne, Louisiana, com *167 prised in Section 77, Township 20 South, Range 18 East, measuring one-half (1/2) arpent front on the right descending bank of the Bayou Little Caillou by depth of survey and bounded now or formerly as follows: Above or North and Below or South of property of Royalty Properties. Said tract of land comprising the upper one-half (i/á) of Lot 42 of the Pierre Daspit Subdivision.
The Dupont Corporations answered plaintiff’s petition asserting ownership of subject property in the proportion of an undivided one-half ()4) interest each by virtue of a chain of conveyances beginning December 30, 1903, and praying to be decreed owners of the funds on deposit (as well as the property itself) in the proportions hereinabove set forth.
Royalty Properties, Inc. also answered asseverating its ownership of the property through certain conveyances commencing with a patent from the United States Government prior to 1866, and continuing by unbroken chain, to the present time.
The trial court rendered judgment in favor of the Dupont Corporations, recognizing their ownership of the disputed property in the proportion of an undivided one-half (14) interest each, and from said adverse judgment defendant Royalty Properties, Inc., has taken this appeal.
In its answer Royalty Properties, Inc. specially pleads that a necessary link in the chain of title of the Dupont Corporations is fatally defective in that a certain Sheriff sale of May 18, 1912, upon which the Duponts rely, is an absolute nullity. Accordingly appellant maintains the Sheriffs Deed in question should be adjudged null, void and of no effect; that it be can-celled and erased from the conveyance records of Terrebonne Parish; and that defendant Royalty Properties, Inc. be declared the true and lawful owner of the funds on deposit as well as the land in dispute herein.
The record contains an agreed statement of facts entered into between defendants and filed of record herein during April, 1961. Subsequently, on May 19, 1961, by supplemental and amended petition, Cities Service Oil Company was substituted as plaintiff herein in place of Arkansas Puel Oil Corporation by virtue of the former corporation’s acquisition of the latter. In the aforesaid supplemental and amended petition allegations were made concerning the creation of certain units affecting subject property. These latter allegations, however, are not before us as the supplemental and amended petition in which they were made was filed subsequent to introduction of the previously mentioned stipulation of facts and the record is devoid of any evidence or stipulation bearing upon the allegations of said supplemental and amended petition.
All claimants of subject property assert title thereto as record owners and, alternatively, ownership thereof by acquisitive prescription. The only issue, however, is the question of record title as all claimants de-raign title from a common ancestor, namely, August Benoit, and no claimant has offered evidence of adverse possession. The evidence consists entirely of recorded documents upon which the contending parties rely as establishing their respective claims of ownership.
In the year 1912 a corporation styled A. M. & J. C. Dupont, Limited, as judgment creditor of August Benoit, seized subject property then belonging to said Benoit to satisfy its judgment. Pursuant to a fi. fa. issued in the suit, subject property was sold at Sheriff sale on May 18, 1912. The two Dupont Corporations assert title to the property in question through chain emanating from the Sheriff sale of May 18, 1912. On the other hand, however, defendant Royalty Properties, Inc. claims title through a sale from August Benoit to one Ross Sterling on March 14, 1913 and from Ross Sterling to Royalty Properties, Inc. in 1938. There is no dispute between the claimants as to the status or condition of the record title either since 1913 or prior to 1912.
*168 It is conceded by defendant Royalty Properties, Inc. that if the Sheriff sale of May 18, 1912 is valid the two Dupont Corporations own the property at issue whereas the Duponts acknowledge that if said Sheriff sale is null and void as contended by Royalty Properties, Inc., then and in that event, Royalty Properties, Inc. is the lawful owner of the land involved in this con-cursus proceeding.
The documents of record and the stipulation between the adverse claimants reveals the facts to be largely undisputed. On May 1, 1911, A. M. & J. C. Dupont, Ltd., a corporation, obtained a money judgment in the sum of $108.75 against August Benoit. Pursuant to said judgment a fi. fa. issued ordering execution thereof on the basis of which said fi. fa. subject property (then belonging to Benoit) was seized and sold at public auction to satisfy the aforesaid judgment of said A.M. & J. C. Dupont, Ltd. At the Sheriff Sale held May 18, 1912, the property in question was adjudicated to “A. M. & J. C. Dupont”, the abbreviation “Ltd.” being omitted from the name of the purchaser.
The return on the fi. fa. issued pursuant to the judgment obtained by A. M. & J. C. Dupont, Ltd. contains, inter alia, the following:
“ * * * the said A. M. & J. C. Dupont for the price and sum of Two Hundred Dollars, of which sum the said purchasers paid into my hands in cash in payment of Costs the sum of Thirty Six 90/100 leaving a balance of say the sum of One Hundred and Sixty-three 10/100 Dollars, which balance the said purchasers retained in their hands to be devoted first to the payment of the Mortgage firstly recited in the certificate of Mortgages above refered (sic) to and whatever balance might be left to be devoted as far as it would go towards the payment of the Mortgage secondly recited in said certificate, said secobdly (sic) recited mortgage being the mortgage on which this writ was based, wherefore I have credited this Writ with said last balance in part satisfaction of same a (sic) and return this Writ in part satisfies, (sic) (For further particulars and data in full see Proces Verbal #'#'## (sic) of Sale).”
The Sheriff’s deed of May 18, 1912, however, recites:
“ * * * when A. M. & J. C. Dupont, being the last and highest bidders, said property was adjudicated to said A. M. & J. C. Dupont for the price and sum of Two Hundred Dollars, of which sum the said purchasers paid into my hands in cash in payment of costs the sum of Thirty Six 90/100 Dollars,. which sum I have destributed (sic) as follows, to wit:—
I have paid Clerk’s costs, amounting to . $10.50
I have paid costs of advertisement amounting to. 14.00
I have paid Sheriff’s costs, amounting to . 12.40
leaving a balance of say the sum of $163.10 One Hundred and Sixty-three 10/100 which balance the said purchaser retained in his hands to be devoted: first towards paying the Mortgage forstly (sic) recited in the Certificate of Mortgages hereto attached and made a part hereof, and whatever balance was left to be devoted as far as it would go towards the payment of the Mortgage secondly recited in said certificate, said secondly recited being the mortgage on which the Writ in obedience to which this sale was made was based, wherefore I have credited to said Writ whatever balance there might be left, in part satisfaction of said Writ.”
From the foregoing it appears that either the corporation A. M. & J. C. Dupont, Ltd., or A. M. & J. C. Dupont, individually, purchased subject property at the aforesaid Sheriff Sale for the price and sum of $200.00 of which amount the sum of $36.90 was paid *169 the Sheriff in Cash to cover court costs. It further appears that the Sheriff permitted the purchaser (or purchasers) to retain the balance of said purchase price, namely, the sum of $163.10 to satisfy a prior special mortgage in the sum of $45.00 with interest thereon at 8% per annum from February 1, 1910 as well as the judgment of the seizing creditor insofar as the remaining balance would permit. It is conceded that the prior mortgage in the sum of $45.00 in favor of Joseph Cunio, Jr. was duly paid and can-celled. Subsequently, on April 30, 1913, the judgment of the seizing creditor A. M. & J. C. Dupont, Ltd. was cancelled upon an authorization which will hereinafter be discussed in some detail.
Appellant Royalty Properties, Inc. contends the Sheriff Sale in question is null and void because the sale was to A. M. and J. C. Dupont individually which constituted said purchasers third party adjudicatees considering the seizing creditor was the corporation A. M. & J. C. Dupont, Ltd. On this assumption learned counsel for appellant argues that the Sheriff Sale is null and void for the reason that a third party ad-judicatee at a judicial sale must pay into the hands of the Sheriff the amount of his bid in cash concurrently with the adjudication (retaining only such portion as is necessary to pay special mortgages and privileges priming the judgment of the seizing creditor) and that failure to pay the amount due to the Sheriff renders the sale an absolute nullity. As authority for the position taken esteemed counsel for appellant cites, inter alia, Pearlstein v. Mattes, 223 La. 1032, 67 So.2d 582.
The Duponts, however, maintain that notwithstanding the Sheriff Sale was to A. M. & J. C. Dupont individually (and as such to a third party adjudicatee) it was nevertheless a valid sale because even though a third party adjudicatee may retain in his hands only the amount of the special mortgages priming the claim of the seizing creditor, it is immaterial whether the remaining balance be paid by the third party adjudicatee since the evidence shows the seizing creditor (the corporation) was in fact paid as appears from the subsequsnt cancellation of its judicial mortgage.
It is most significant that the stipulation between the contending parties concedes, acknowledges and grants that the judgment obtained by the corporation A. M. & J. C. Dupont, Ltd. was never sold, transferred, assigned or otherwise alienated by said corporation. Of considerable further significance is the fact that all claimants concede and acknowledge that the writ of fi. fa. pursuant to which the property was sold at Sheriff Sale on May 18, 1912, was validly issued in the name of the corporation A. M. & J. C. Dupont, Ltd.
Our learned brother below found that the controversial Sheriff Sale was in fact a transfer to A. M. & J. C. Dupont individually but, for reasons which it is not necessary to discuss herein, nevertheless concluded the Dupont corporations to be owners of the property involved.
We find, for reasons which will hereinafter be set forth, that our esteemed brother below erred in concluding that the Sheriff Sale of May 18, 1912, was an adjudication to A. M. and J. C. Dupont individually. For the same reasons we further conclude that the mutual contention of the adverse claimants, that the fi.fa. in question lawfully issued in the name of the corporation, whereas, the Sheriff Sale was to A. M. and J. C. Dupont individually, is erroneously predicated upon what we consider an inconsistency patent upon the face of the record before us.
In reaching the conclusion that the Sheriff Sale was to A. M. and J. C. Dupont, individually, the learned trial court did so-largely upon the basis that the abbreviation “Ltd.” was left off thereby indicating an intention of the purchaser to take title as- individuals and not in the corporate name.
Article 432 LSA-R.C.C. (in effect at the time of the sale in question) provides, in substance, that corporations must sue, be sued and perform all legal acts- *170 in the name in which they are incorporated but that a slight alteration in name is not important. It has been held that accidental omission of the abbreviation “Inc.” from a corporate name is of no moment and does not affect the corporate character of an act designed or intended to be executed on behalf-of the corporation involved. National Oil Works v. Korn Bros., 164 La. 800, 114 So. 659; Southern Hide Co. v. Best, 174 La. 748, 141 So. 449; R. B. Tyler Co. v. Merrill Engineering Co., Inc., 181 La. 191, 159 So. 319.
The record reveals that the petition of A. M. & J. C. Dupont, Limited bears no caption, merely commencing with these two opening paragraphs:
“To the Honorable the Judge of the 20th Judicial District Court of the State of Louisiana, in and for the Parish of Terrebonne:
“The petition of A. M. & J. C. Du-pont, Limited, a corporation organized under the laws of the State of Louisiana/ domiciled in the Parish of Terre-bonne, herein represented through its President, Albert M. Dupont, a resident of the Parish and State aforesaid, with respect represents:”
Of further importance is the fact that the prayer of said corporation’s petition prays for judgment against the defendant therein in favor of “petitioner A. M. & J. C. Dupont, Limited”.
The judgment, however, rendered in favor of petitioner in the suit against Benoit bears the following caption:
A. M. & J. C. Dupont Vs. No. 7112 August Benoit
State of Louisiana 20th Judicial District Court Parish of Terrebonne
Despite; the fact that the abbreviation “Ltd.”yas omitted from the caption of the judgment, the decretal portion of said judgment, recites the following:
“It is therefore, ordered, adjudged and ‘debited that plaintiff A. M. & J. C. Difpont, Limited, do have and recover judgment against defendant, August Benoit * * * ”
: The. fi. fa.,, pursuant to which Benoit’s property was seized and sold bears the following caption:
“A. M. & J. C. Dupont Vs. August Bienoit”
The body of the fi. fa. recites that it is issued to satisfy a judgment lately rendered against the defendant “August Benoit” in favor of “A. M. & J. C. Dupont”. At no other place in the fi. fa. does the name of the seizing creditor appear. It is readily apparent that in ea,ch instance the abbreviation “Ltd.” was omitted from the name of'the judgment creditor. It is also clear that the initial error in omitting the abbreviation. “Ltd.” from the caption of the judgment obtained by A. M. & J. C. Dupont, Ltd. was. perpetuated and carried over in the fi. fa., the Sheriff’s return on the fi. fa. and the Sheriff’s deed as well. .
It is of utmost importance to bear in mind that the contending parties acknowledge-the fi. fa. to have been validly issued in the name of the corporate judgment creditor notwithstanding neither the abbreviation “Ltd.” nor the word “Limited” fdllows the name of the seizing creditor in the two instances in which the judgment creditor is therein designated as “A. M. & J. C. Du-pont”. We observe, however, that this contention is in keeping with the stipulation to the effect that the judgment obtained by the corporation was never sold, assigned, conveyed or otherwise alienated by A. M. & J. C. Dupont, Ltd., either in whole or in *171 part. There can be no question but that said stipulation is binding upon claimants and that their respective rights must stand or fall upon the merits of the positions assumed and contentions advanced by each litigant. The learned trial court likewise recognized the validity of the fi. fa. but as previously stated herein, erroneously concluded the sale was to A. M. & J. C. Dupont individually.
Considering the judgment obtained by A. M. & J. C. Dupont, Ltd. was never sold, transferred, assigned or alienated, it necessarily follows that, as contended by the claimants (and as found by the learned trial court) the fi. fa. validly issued in the name of the corporation which was the only party entitled to seize the judgment debtor’s property thereunder. The inconsistency and fallacy in the contentions of the parties (as well as in the trial court’s finding that the sale was to A. M. and J. C. Dupont individually) lies in the fact that, without discernible reason therefor the appellation “A. M. & J. C. Dupont” is taken to mean A. M. & J. C. Dupont, Ltd., insofar as the fi. fa. is concerned whereas the same “A. M. & J. C. Dupont” is taken to mean A. M. and J. C. Dupont individually quoad the return on the fi. fa. and the proces verbal of the sheriff’s sale. Obviously, without basis for distinguishing between the term as used in each instance it must be held to mean the same in each case. We find nothing in the Sheriff Sale to warrant the differentiation found by our esteemed brother below. Reference to the hereinabove quoted portion of the Sheriff’s deed shows that in one instance the proces verbal recites "which balance the said purchaser retained in his hands” (emphasis supplied) indicating the singular whereas subsequently it is recited that the property is sold “unto the said A. M. & J. C. Dupont, their heirs and legal representatives” (emphasis supplied) indicating perhaps a sale to individuals.
All attending circumstances considered, we conclude that the initial error in omitting the abbreviation “Ltd.” from the caption of the judgment was perpetuated in the fi. fa., the return on the fi. fa. and the proces verbal of the Sheriff’s deed. It appears reasonably clear and certain that in preparing the fi. fa. and other subsequent documents mentioned the Clerk of Court and Sheriff were misled by the incorrect captioning of the judgment. The error of the Sheriff is even more apparent when we consider that in one instance in his proces verbal he refers to the purchaser in language which indicates a single purchaser was intended whereas in another he employs language signifying more than one purchaser. Had purchase as individuals been intended it would appear that the purchasers would have been denominated A. M. Du-pont and J. C. Dupont and not A. M. & J. C. Dupont. In addition, the fact that the purchaser was permitted to retain the entire portion of the purchase price save and except incurred court costs would seem to further indicate the purchaser was the seizing creditor, namely, the corporation. Had not the purchaser been the corporate judgment creditor, it appears unlikely that it would have stood by and permitted a third party adjudicatee to purchase the property and retain the entire purchase price save and except court costs. Under such circumstances it would seem that the judgment creditor would have demanded payment of its claim insofar as the available proceeds of the sale would permit. If, however, the purchaser were the judgment creditor, retention of the balance of the purchase price by such purchaser would be of little moment as the sole obligation of the seizing creditor would then be to discharge the prior mortgage whereupon title to the seizing creditor would be perfected in satisfaction of its claim against the judgment debtor. It is conceded that the prior claim of Cunio was in fact paid and the priming mortgage cancelled.
It appears therefore that none of the claimants presently before the court are possessed of valid record title to subject property. Similarly, since the record is devoid of evidence of possession there is no basis for consideration of the pleas of pre *172 scription advanced by the contending parties.
From the record presently before us it would appear that record title to the property in dispute is vested in a party not joined in these proceedings, namely, the corporation known as A. M. & J. C. Dupont, Ltd. since it is conceded that there appears of record no transaction wherein said corporation purportedly alienated or transferred subject property. The rights of said corporation (if any), however, in and to the property cannot be decreed in this proceeding since the corporation has not been joined herein. It is urged by appellant Royalty Properties, Inc. that the Sheriff Sale in question should be deemed a sale to A. M. Dupont and J. C. Dupont individually since the heirs of said A. M. Dupont and J. C. Dupont have treated the transaction as a sale to their said ancestors individually and both Dupont Corporations presently before the court trace title from the heirs of said A. M. Dupont and J. C. Dupont. The answer to this contention is simply that although the rights of A. M. & J. C. Dupont, Ltd. may not be decreed herein considering said corporation has not been joined as a party to these proceedings, by the same token, however, whatever rights said corporation may have in and to subject property cannot be adversely affected or prejudiced by any stipulation, agreement, acknowledgment, admission or contention made, advanced or agreed to by any litigant at bar. The corporation, being the adjudicatee at the Sheriff Sale, became the record owner of the property and the rights thereby acquired cannot be affected by the actions of third parties. So far as the present record shows the heirs of A. M. Dupont and J. C. Dupont are strangers to the corporate entity known as A. M. & J. C. Dupont, Ltd. It is elementary that the action or conduct of one party is without legal effect concerning the rights of another without the knowledge, consent or authorization of such other.
 Similarly, it is to be understood that the respective claims of the present litigants to ownership of subject property by virtue of title allegedly acquired by prescription acquirendi causa, is not at issue in these proceedings and is not adjudicated herein. The respective pleas of prescription were not passed upon by the trial court and are not urged before us. Indeed such pleas could not be heard before us because, as previously shown, we note, upon our own motion as authorized by Articles 645 and 646 LSA-C.C.P., the nonjoinder of a party indispensable to the proceedings.
From the foregoing it follows that neither claimant of subject property has established valid record title thereto and that plaintiffs have erroneously and wrongfully instituted this concursus proceedings against parties all of whom have failed to establish either record title in and to subject property or an interest in the funds deposited by plaintiffs in the registry of the lower court.
Plaintiffs having provoked this proceedings against improper parties will be cast for all costs.
For the reasons hereinabove set forth it is ordered, adjudged and decreed that the judgment of the trial court recognizing and decreeing defendants A. M. Dupont Corporation and J. C. Dupont, Inc. owners of subj ect property in the proportion of an undivided one-half {1/2) interest each be and the same is hereby annulled, reversed and set aside and judgment rendered herein dismissing this concursus proceeding at the costs of plaintiffs, Placid Oil Company and Cities Service Oil Company.
Reversed and dismissed.